# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **GILBERT FORMOSO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 1:19-cv-00476** |
| | § | |
| **3M COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

Plaintiff, Gilbert Formoso, by and through counsel, brings this Complaint for damages against 3M Company ("Defendant") and in support states the following:

## NATURE OF ACTION

1.      This products liability action is brought on behalf of the above-named Plaintiff, arising out Plaintiff's use of Defendant's dangerously designed and defective Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) ("3M Dual-ended Combat Arms earplugs" or "Dual-ended Combat Arms earplugs").  As a result of such use, Plaintiff suffered permanent injuries and significant pain and suffering, emotional distress, lost wages and earning capacity, and diminished quality of life.  Plaintiff respectfully seeks all damages to which he may be legally entitled.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) based on complete diversity of citizenship between Plaintiff and Defendant. The amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      This Court has personal jurisdiction over Defendant pursuant to the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042 (West).  Defendant transacts business

within the State of Texas, contracted to sell and supply their Dual-ended Combat Arms earplugs in the State of Texas, and committed tortious acts and omissions in Texas. Defendant's tortious acts and omissions caused injury to Plaintiff Gilbert Formoso, a resident of Texas. Defendant intended and reasonably expected that its defective Dual-ended Combat Arms earplugs would be sold, distributed and/or used in Texas and could cause injury in Texas and/or to residents of Texas.

4.      Plaintiff is a citizen of Texas.   Plaintiff further suffered and continues to suffer injuries complained of herein within the Western District of Texas.

## PARTY PLAINTIFF

5.      Plaintiff, Gilbert Formoso, is a citizen of the United States of America, and is a citizen of Travis County, Texas.

6.      Plaintiff, Gilbert Formoso, served in the United States Army (the "Army") from approximately 1998 – 2018.

7.      Prior to joining the Army and prior to using 3M Dual-ended Combat Arms earplugs, Plaintiff, Gilbert Formoso, had no signs or symptoms of hearing loss and/or tinnitus.

8.      During his time in the  Army, Plaintiff, Gilbert Formoso, was  deployed to Iraq and Afghanistan.

9.      At the time of Plaintiff's service in the Army, the 3M Dual-ended Combat Arms earplugs were standard issue.

10.      The 3M Dual-ended Combat Arms earplugs were provided to Plaintiff, Gilbert Formoso, at U.S. bases in Iraq and Afghanistan (among other Army locations), and Plaintiff wore the 3M Dual-ended Combat Arms earplugs during the course of his service in the Army.

11.      As a result of Plaintiff's use of Defendant's 3M Dual-ended Combat Arms earplugs, Plaintiff Gilbert Formoso, has suffered and continues to suffer from hearing loss and

tinnitus as well as any and all of its sequelae and attendant pain, suffering, and emotional distress.

12.    The injuries and damages sustained by Plaintiff, Gilbert Formoso, were caused by the defective nature of Defendant's 3M Dual-ended Combat Arms earplugs and its unlawful conduct with respect to its design, manufacture, marketing and sale.

## PARTY DEFENDANT

13.    Defendant 3M COMPANY (hereinafter collectively referred to as "Defendant," "3M," or "3M/Aearo") is, and at all times relevant to this action was, a corporation organized and existing under the laws of the state of Delaware with its principal place of business in St. Paul, Minnesota.

14.    Among other things, Defendant is in the business of designing, manufacturing, and selling worker safety products, including hearing protectors. Defendant has a dominant market share in virtually every safety product market, including hearing protection.

15.    The 3M Dual-ended Combat Arms earplugs were originally created by a company called Aearo Technologies ("Aearo" or "3M/Aearo").

16.    Defendant acquired Aearo in 2008, including Aearo's liabilities, (and thus 3M is liable for Aearo's conduct as alleged herein).

17.    Upon information and belief, at all relevant times, Defendant was present and doing business in the States of Delaware, Minnesota and Texas.

18.    Upon information and belief, at all relevant times, Defendant transacted, solicited, and conducted business in the States of Delaware, Minnesota and Texas and derived substantial revenue from such business.

19.    Upon information and belief, at all times relevant hereto, Defendant expected or should have expected that its acts would have consequences within the United States of America, and the States of Delaware, Minnesota and Texas.

### FACTS COMMON TO ALL COUNTS

20.    Plaintiff seeks compensatory damages as a result of Plaintiff's use of the 3M Dual- ended Combat Arms earplugs, which have caused Plaintiff to suffer and continue to suffer from hearing loss and tinnitus as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids, and fear of developing any of additional health consequences.

21.    Defendant researched, manufactured, tested, advertised, promoted, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, promoted, distributed, and sold the 3M Dual-ended Combat Arms earplugs.

22.    Defendant knowingly sold the Dual-ended Combat Arms earplugs to the United States Armed Forces ("USAF") without disclosing defects that hampered the effectiveness of the hearing protection device.  *See United States Department of Justice, 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs* (Jul. 26, 2018), *available at* https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual  (last visited March 25, 2019).

23.    The defective design of Defendant's 3M Dual-ended Combat Arms earplugs prevents a snug fit in the ear canal of the wearer – an inherent defect in the earplugs about which Defendant failed to adequately warn the USAF, the purchaser of the earplugs, and the wearers, including Plaintiff.

24.     Upon information and belief, Defendant concealed their knowledge of 3M Dual-ended Combat Arms earplugs' defects, specifically the fact that they were ineffective and caused hearing loss and tinnitus, from the USAF, other government agencies, and the 3M Dual-ended Combat Arms earplugs wearers, including Plaintiff.

25.     Upon information and belief, these representations were made by Defendant with the intent of defrauding and deceiving the USAF, other government agencies, and the 3M Dual-ended Combat Arms earplugs wearers, including Plaintiff, and were made with the intent of inducing the USAF to purchase the earplugs and to recommend, issue and dispense the defective 3M Dual-ended Combat Arms earplugs to service members stationed domestically and abroad, including Plaintiff, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of Plaintiff herein.

26.     As a result of the foregoing acts and omissions, Plaintiff was and still is caused to suffer serious injuries including *inter alia* hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids, and fear of developing any additional health consequences.

27.     Consequently, Plaintiff seeks compensatory damages as a result of Plaintiff's use of Defendant's Dual-ended Combat Arms earplugs, which have caused Plaintiff to suffer from hearing loss tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids, and fear of developing any additional health consequences.

28.    This action seeks, among other relief, general and special damages and equitable relief due to Plaintiff Gilbert Formoso suffering hearing loss and tinnitus caused by Plaintiff's use of Defendant's defective 3M Dual-ended Combat Arms earplugs.

29.    Earplugs, like the 3M Dual-ended Combat Arms earplugs, are sold with a stated Noise Reduction Rating ("NRR") that should accurately reflect the effectiveness of hearing protection. NRR is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment. Hearing protectors are classified by their potential to reduce noise in decibels ("dB"), a term used to categorize the power or density of sound. They must be tested and approved by the American National Standards Institute ("ANSI") in accordance with the Occupational Safety & Health Administration ("OSHA") guidelines. The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

30.    Upon information and belief, the USAF likely purchased, at a minimum, one pair of 3M's Combat Arms earplugs for each deployed soldier annually involved in certain foreign engagements between at least 2003 and at least 2015. *See* McIlwain, D. Scott *et al.*, *Heritage of Army Audiology and the Road Ahead: The Army Hearing Program*, AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec. 2008).

31.    3M/Aearo's Dual-ended Combat Arms earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by Defendant to the military until at least late 2015, when Defendant discontinued the earplugs.

32.    The defective earplugs have not been recalled and therefore are likely in continued use by service members.

33.     On July 26, 2018, Defendant agreed to pay $9.1 million to resolve allegations that it knowingly sold the Dual-ended Combat Arms Earplugs to the USAF without disclosing defects that hampered the effectiveness of the hearing protection device.

34.     Plaintiff was first issued Defendant's defective 3M Dual-ended Combat Arms earplugs in approximately 2003.

35.     Plaintiff was reissued the defective 3M Dual-ended Combat Arms earplugs on several other occasions during his service in the USAF.

36.     At all relevant times, Defendant heavily marketed the 3M Dual-ended Combat Arms earplugs as an effective hearing protection device to be used during military training and/or combat.

37.     Defendant's marketing of the 3M Dual-ended Combat Arms earplugs included advertisements, press releases, web site publications, and other communications.

38.     Defendant has had notice of the defective nature of its 3M Dual-ended Combat Arms earplugs, and of the serious hearing related injuries associated therewith.

39.     Employees from 3M/Aearo began testing the 3M Dual-ended Combat Arms earplugs in approximately January of 2000.

40.     3M/Aearo chose to conduct the testing at its own laboratory rather than an outside, independent laboratory.

41.     3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the Dual-ended Combat Arms earplugs.

42.     3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the 3M Dual-ended Combat Arms earplug inserted; and (3) the subject's hearing with the closed/blocked

(olive) end of the Dual-ended Combat Arms earplug inserted. This testing was designed to provide data regarding the NRR of the Dual-ended Combat Arms earplugs.

43.    3M/Aearo personnel monitored the results of each subject as the test was performed and could thus stop the test if the desired NRR results were not achieved.

44.    Eight of the ten subjects were tested using both the open and closed end of the Dual- ended Combat Arms earplugs.

45.    Testing of the eight subjects suggested an average NRR of 10.9 on the closed end of the earplug, which was far below the adequate NRR that 3M/Aearo personnel would and should have expected for the closed end.

46.    3M/Aearo prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms earplugs.

47.    3M/Aearo personnel determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptibly to the wearer.

48.    The symmetrical nature of the earplug prevents a snug fit when worn either "open" or "closed" according to the standard fitting instructions.

49.    3M/Aearo personnel determined that a snug fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

50.    3M/Aearo personnel decided not to test the closed end of the Dual-ended Combat Arms earplugs for two of the ten subjects because the results were well below the intended and desired NRR.

51.    3M/Aearo completed testing of all ten subjects with the open end of the Dual-ended Combat Arms earplugs to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

52.    3M/Aearo represented the -2 NRR as a "0" NRR, which 3M/Aearo has displayed on its packaging since its launch.

53.    3M/Aearo falsely touts the "0" NRR as a benefit of the Dual-ended Combat Arms earplugs by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection. However, the "true" -2 NRR actually amplifies sound, thereby exposing the wearer to harm.

54.    Upon identifying the fit issue, 3M/Aearo re-tested the olive, closed end of the Dual- ended Combat Arms earplugs in February 2000 using different fitting instructions.

55.    When testing the closed end, 3M/Aearo personnel folded back the yellow flanges on the open end of the Dual-ended Combat Arms earplugs prior to insertion.

56.    Using this "modified" fitting procedure, 3M/Aearo achieved a "22" NRR on the closed end of the Dual-ended Combat Arms earplug.

57.    Defendant, however, never properly warned USAF service men and women that the only potential way to achieve this purported NRR was to modify the Dual-ended Combat Arms earplug by folding the yellow flanges on the opposite end.

58.    The yellow, open end of the Dual-ended Combat Arms earplug was not re-tested using the "modified" fitting procedure.

59.    Since 2003, 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the USAF in response to Requests for Proposals ("RFP").

60.     From 2003-2012, 3M/Aearo was the exclusive supplier of this type of earplugs to the USAF.

61.     3M/Aearo was aware of the design defects alleged herein in as early as 2000.

62.     Accordingly, the defects of the Dual-ended Combat Arms earplugs were known to Defendant many years before 3M/Aearo became the exclusive provider of the earplugs to the USAF.

63.     Defendant knew at the time it bid for the initial IQC that the Dual-ended Combat Arms earplugs had dangerous design defects, as they would not adequately protect the users from loud sounds. Defendant did not adequately warn of the defects and did not adequately warn or instruct how to wear the earplugs.

64.     3M/Aearo responded to the military's RFPs with express certifications that it complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

65.     3M/Aearo knew at the time it made its certifications that the earplugs did not comply with the MPID.

66.     3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear, imperceptibly to not only the wearer but also trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug, while the user and/or audiologist incorrectly believes that the earplug is working as intended.

67.     The pertinent Salient Characteristics set forth in the MPID, which was uniform across all RFPs, in relevant part, are as follows:

> 2.1.1. Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the

wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.

2.2.2. The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.

2.4    Workmanship.  The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability.

2.5    Instructions. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.

Solicitation No. SP0200-06-R-4202 at 41-42 (emphasis added).

68.    The Environmental Protection Agency ("EPA") also has promulgated regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, *et seq.*, that govern the testing and attendant labeling of hearing protective devices like the Dual-ended Combat Arms earplugs. Specifically, 40 C.F.R. § 211.206-1 provides that:

The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974.

69.    Additionally, 40 C.F.R. § 211.204-4(e) of the EPA regulations requires that certain "supporting information" must accompany hearing protection devices sold in the United States:

The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location…**Instructions as to the proper insertion or placement of the device**. (emphasis added).

70.     3M/Aearo also knowingly used the deliberately-flawed retest of the closed end of the earplugs to sell Dual-ended Combat Arms earplugs to the military with the representation that they possessed a "22" NRR in the closed position.

71.     Defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, the Noise Control Act, and the MPID.

72.     Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not instruct wearers to use the "modified" insertion method used in testing, which would require the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

73.     Defendant's standard instructions for "proper use" of its Dual-ended Combat Arms earplugs do not warn wearers that subjects in testing did not follow these standard instructions, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

74.     Instead, Defendant improperly instructed wearers to simply insert the earplugs into the ear canal.

75.     By failing to instruct wearers of the Dual-ended Combat Arms earplug to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into their ears (which is necessary to achieve the "22" NRR), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

76.     3M/Aearo's packaging and marketing of such earplugs with standard insertion instructions and with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M/Aearo's defective earplugs.

77.     Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M/Aearo's instructions for use of the earplugs do not instruct, and never have instructed, all wearers to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem).

78.     3M/Aearo's instructions instead have provided standard fitting instructions for inserting the earplug on both ends, which are facially inadequate.

79.     3M/Aearo was aware prior to selling the earplugs to the military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs it wanted on both ends of the Dual-ended Combat Arms earplug, and 3M/Aearo continued to use these inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect in the earplugs.

80.     Even if used as directed, Defendant failed to adequately warn against the high risk of hearing related injuries associated with its Dual-ended Combat Arms earplugs.

81.     In omitting, concealing, falsifying and inadequately providing critical safety information regarding the 3M Dual-ended Combat Arms earplugs in order to induce their purchase and use, Defendant engaged in conduct likely to mislead consumers including Plaintiff. This conduct is fraudulent, unfair, and unlawful.

82.     Despite clear knowledge that the 3M Dual-ended Combat Arms earplugs were ineffective and cause a significantly increased risk of hearing loss, tinnitus, and other injuries, Defendant continued to market and sell its 3M Dual-ended Combat Arms earplugs without warning the earplug wearers or the U.S. military of the significant risks of hearing related injuries.

83.    Even if used as directed, persons who wore the 3M Dual-ended Combat Arms earplugs during training and/or active duty in the military, such as Plaintiff Gilbert Formoso have been exposed to significant risks stemming from Defendant's defective Dual-ended Combat Arms earplugs.

84.    Consumers and the earplug wearers, including Plaintiff Gilbert Formoso, relied on Defendant's representations and were misled as to the safety and effectiveness of the 3M Dual- ended Combat Arms earplugs.

85.    Had the USAF and/or Plaintiff Gilbert Formoso known of the risks of hearing loss and/or tinnitus associated with Defendant's defective 3M Dual-ended Combat Arms earplugs, Plaintiff would not have used Defendant's Dual-ended Combat Arms earplugs.

86.    At all relevant times, Plaintiff Gilbert Formoso had alternative safer methods and/or devices for hearing protection that were not defective and did not hamper the effectiveness of hearing protection.

87.    There were other products on the market offering hearing protection that were not defectively designed and did not contain defects that hampered the effectiveness of the device.

88.    As a result of Defendant's actions and inactions as outlined herein, Plaintiff was injured due to Plaintiff's use of the 3M Dual-ended Combat Arms earplugs, which caused Plaintiff and continues to cause Plaintiff to suffer from tinnitus and hearing loss and all of its sequelae.

89.    Prior to July of 2018, Plaintiff Gilbert Formoso did not know about the causal link between Plaintiff's hearing loss and/or tinnitus and his use of Defendant's defective 3M Dual-ended Combat Arms earplugs.

90.    Prior to July of 2018, Plaintiff did not have access to or actually receive any information regarding the defective nature of Defendant's Dual-ended Combat Arms earplugs and the increased risk of hearing loss and tinnitus associated with the use of the 3M Dual-ended Combat Arms earplugs.

## ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS

91.    Plaintiff filed this lawsuit within the applicable limitations period of first suspecting that the 3M Dual-ended Combat Arms earplugs caused his injuries. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the Dual-ended Combat Arms earplugs-induced injuries at an earlier time because, at the time of these injuries, the cause was unknown to Plaintiff, the USAF, and the general public.

92.    Plaintiff did not suspect, nor did Plaintiff have reason to suspect, the cause of these injuries, or the tortious nature of the conduct causing these injuries, until less than the applicable limitations period prior to the filing of this action.

93.    Furthermore, the running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Through Defendant's affirmative misrepresentations and omissions, Defendant actively concealed from Plaintiff the risks associated with the defects in the 3M Dual-ended Combat Arms earplugs.

94.    As a result of Defendant's actions, Plaintiff was unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the defects and risks alleged herein and that those defects and risks were the direct and proximate result of Defendant's acts and omissions.

95.    Through Defendant's affirmative misrepresentations and omissions pertaining to the safety and efficacy of the 3M Dual-ended Combat Arms earplugs, Plaintiff was prevented from discovering this information sooner because Defendant herein misrepresented and continues to

misrepresent the defective nature of the 3M Dual-ended Combat Arms earplugs used by Plaintiff. Defendant had exclusive control and because Plaintiff could not reasonably have known that the 3M Dual-ended Combat Arms earplugs were defective and ineffective, Defendant is estopped from relying on any statues of limitations that might otherwise be applicable to claims asserted in this Complaint.

96.    Additionally, pursuant to 50 U.S.C. § 3936, the Servicemembers Civil Relief Act, the period of Plaintiff's service in the USAF may not be included in computing any statute of limitations applicable herein.

97.    Defendant is estopped from relying on any statues of limitations or repose by virtue of its acts of fraudulent concealment, which include intentional concealment form Plaintiff, the USAF and the general public that its 3M Dual-ended Combat Arms earplugs are defective, while continually selling the product with the effects described in this Complaint.

## FIRST COUNT

## PRODUCT LIABILITY – DESIGN DEFECT
### (Tex. Civ. Prac. & Rem. § 82.0001, *et seq.*)

98.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

99.    Defendant designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and/or distributed the 3M Dual-ended Combat Arms earplugs, including the 3M Dual-ended Combat Arms earplugs used by Plaintiff, Gilbert Formoso, were in a defective and unreasonably dangerous condition.

100.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

101. The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

102. Defendant knew that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the USAF service members who used the device.

103. The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

104. The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device because the design of the Dual-ended Combat Arms earplugs allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to a USAF service member's hearing unbeknownst to him or her.

105. Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiff.

106. At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary USAF service member who used them.

107. At all times relevant to this action, Dual-ended Combat Arms earplugs, as designed, developed, researched, tested, licensed, manufactured, packaged, labeled, promoted, marketed, sold, and/or distributed by Defendant, was defective in design and formulation in one or more of the following particulars:

      a.    When placed in the stream of commerce, the 3M Dual-ended Combat Arms earplugs contained unreasonably dangerous design defects and were

not reasonably safe as intended to be used, subjecting Plaintiff to risks that exceeded the benefits of the product;

b.    When placed in the stream of commerce, the 3M Dual-ended Combat Arms earplugs were defective in design and formulation, making use of the earplugs more dangerous than an ordinary consumer would expect and more dangerous than other similar hearing protection devices;

c.    The 3M Dual-ended Combat Arms earplugs were insufficiently tested;

d.    The 3M Dual-ended Combat Arms earplugs caused harmful injuries that outweighed any potential utility;

e.    Defendant was aware at the time the 3M Dual-ended Combat Arms earplugs were marketed and sold that the use of the earplugs would result in an increased risk of hearing loss, tinnitus and other injuries;

f.    Inadequate post-sale surveillance; and/or

g.    There were safer alternative designs and formulations that were not utilized.

108.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

109.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the short-stem design of the earplugs allowed for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

110.    Defendant's conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

111.    As a direct and proximate result of Defendant's design defect, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

112.    Defendant's conduct, as described above, was reckless. Defendant risked the lives of consumers and users of the 3M Dual-ended Combat Arms earplugs, including Plaintiff, with knowledge of the safety and efficacy problems associated with the 3M Dual-ended Combat Arms earplugs, and suppressed this knowledge from the USAF, Plaintiff and the general public. Defendant made conscious decisions not to redesign, adequately warn, or inform the unsuspecting wearers. Defendant's reckless conduct warrants an award of punitive damages.

113.    As a foreseeable, direct, and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff suffered from tinnitus, hearing loss and other related health complications. In addition, Plaintiff requires and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include physician care, monitoring, and treatment. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

114.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious injuries, including hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

115.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related

expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

116.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## SECOND COUNT

### PRODUCT LIABILITY – MANUFACTURING DEFECT
### (Tex. Civ. Prac. & Rem. § 82.0001, *et seq.*)

117.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

118.    At all times material to this action, Defendant was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling the 3M Dual-ended Combat Arms earplugs.

119.    At all times material to this action, the 3M Dual-ended Combat Arms earplugs were expected to reach and did reach USAF personnel in Texas, and throughout the United States and abroad, including Plaintiff, Gilbert Formoso, without substantial change in the condition in which it was sold.

120.    At all times material to this action, the 3M Dual-ended Combat Arms earplugs were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

> a.    When placed in the stream of commerce, 3M Dual-ended Combat Arms earplugs contained manufacturing defects which rendered the product ineffective and unreasonably dangerous;

20

      b.     The subject product's manufacturing defects occurred while the product was in the possession and control of Defendant;

      c.     The subject product was not made in accordance with Defendant's specifications or performance standards; and/or

      d.     The subject product's manufacturing defects existed before it left the control of Defendant.

121.    As a direct and proximate result of the design and manufacturing defect and Defendant's misconduct set forth herein, Plaintiff has suffered and will continue to suffer serious and permanent physical and emotional injuries, has expended and will continue to expend large sums of money for medical care and treatment, has suffered and will continue to suffer economic loss, and have otherwise been physically, emotionally and economically injured.

122.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious injuries, including hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

123.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

124.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## THIRD COUNT

## PRODUCTS LIABILITY – FAILURE TO WARN
### (Tex. Civ. Prac. & Rem. § 82.0001, *et seq.*)

125.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

126.    Defendant has engaged in the business of designing, developing, researching, testing, licensing, manufacturing, packaging, labeling, promoting, marketing, selling, and/or distributing the 3M Dual-ended Combat Arms earplugs. Through that conduct, Defendant knowingly and intentionally placed the 3M Dual-ended Combat Arms earplugs into the stream of commerce with full knowledge that it will reach consumers, such as Plaintiff, Gilbert Formoso who used the 3M Dual-ended Combat Arms earplugs during his time in the USAF.

127.    Defendant researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released the 3M Dual-ended Combat Arms earplugs into the stream of commerce. In the course of same, Defendant directly advertised, marketed, and promoted the 3M Dual-ended Combat Arms earplugs, to the USAF and its personnel, Plaintiff, and other consumers, and therefore had a duty to warn of the risks associated with the use of 3M Dual-ended Combat Arms earplugs.

128.    Defendant expected the 3M Dual-ended Combat Arms earplugs to reach, and they did in fact reach the USAF and its personnel, including Plaintiff, without any substantial change in the condition of the product from when it was initially sold and distributed by Defendant.

129.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

130.    The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

131.    The Dual-ended Combat Arms earplugs are defective and unreasonably dangerous even if Defendant exercised all proper care in the preparation and sale of the product.

132.    Defendant knew that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the USAF service members who used the device.

133.    The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device because the design of the Dual-ended Combat Arms earplugs allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to a USAF service member's hearing unbeknownst to him or her.

134.    Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiff.

135.    At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary USAF service member who used them.

136.    At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary USAF service member who used them.

137.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

138.    The Dual-ended Combat Arms earplugs contained no warnings, or in the alternative, inadequate warnings and/or instructions, as to the risk that the Dual-ended Combat Arms earplugs would allow for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

139.    The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that subjects in testing did not follow Defendant's standard instructions for insertion, but rather the "modified" insertion method requiring the wearer to fold back the flanges of the opposite end before inserting the plug into the ear.

140.    The Dual-ended Combat Arms earplugs contained no warnings or instructions, or in the alternative, inadequate warnings or instructions, that following Defendant's standard instructions for insertion would not achieve the "22" NRR on the closed end and would thereby pose a serious risk to Plaintiff's hearing unbeknownst to him. The warnings and instructions that accompanied the Dual-ended Combat Arms earplugs failed to provide the level of information that an ordinary consumer would expect when using the Dual-ended Combat Arms earplugs in a manner reasonably foreseeable to Defendant.

141.    Had Plaintiff received proper or adequate warnings or instructions as to the risks associated with the Dual-ended Combat Arms earplugs, including but not limited to instructing wearers to fold back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the plug into the ear, Plaintiff would have heeded the warning and/or instructions.

142.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the short-stem design of the earplugs allowed for dangerous

sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him or her.

143.    Defendant's conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

144.    As a direct and proximate result of Defendant's design defect, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

145.    As a foreseeable, direct, and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff suffered from tinnitus, hearing loss and other related health complications. In addition, Plaintiff requires and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses. Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions, activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include physician care, monitoring, and treatment. Plaintiff has incurred and will continue to incur mental and physical pain and suffering.

146.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious injuries, including hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

147.    As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

148.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## FOURTH COUNT

## BREACH OF EXPRESS WARRANTY

149.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

150.    Defendant expressly warranted that the Dual-ended Combat Arms earplugs were safe, effective and well accepted by users.

151.    Through Defendant's public statements, descriptions of the Dual-ended Combat Arms earplugs, and promises relating to the Dual-ended Combat Arms earplugs, Defendant expressly warranted, among other things, that the Dual-ended Combat Arms earplugs were safe and effective for their intended use and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the user's hearing.

152.    These warranties came in one or more of the following forms: (i) publicly made written and verbal assurances of safety; (ii) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Dual-ended Combat Arms earplugs (but which contained material misrepresentations and utterly failed to warn of the risks of the Dual-ended Combat Arms earplugs); (iii) verbal assurances made by Defendant's consumer relations personnel about the safety of the Dual-ended Combat Arms

earplugs which also downplayed the risks associated with the Dual-ended Combat Arms earplugs; and (iv) false and misleading written information and packaging supplied by Defendant.

153.    When Defendant made these express warranties, it knew the purpose(s) for which the Dual-ended Combat Arms earplugs were to be used and warranted it to be in all respects safe and proper for such purpose(s).

154.    Defendant drafted the documents and/or made statements upon which these warranty claims are based and, in doing so, defined the terms of those warranties.

155.    The Dual-ended Combat Arms earplugs do not conform to Defendant's promises, descriptions, or affirmation of fact, and were not adequately packaged, labeled, promoted, and/or fit for the ordinary purposes for which such earplugs are used.

156.    Plaintiff did rely on the express warranties of Defendant herein.

157.    Plaintiff further alleges that all of the aforementioned written materials are known to Defendant and in its possession, and it is Plaintiff's reasonable belief that these materials shall be produced by Defendant and made part of the record once Plaintiff is afforded the opportunity to conduct discovery.

158.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

159.    Defendant knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the Dual-ended Combat Arms earplugs were not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendant.

160.    By reason of the foregoing, Plaintiff has been severely and permanently injured, and will require more constant and continuous medical monitoring and treatment than prior to Plaintiff's use of the 3M Dual-ended Combat Arms earplugs.

161.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious injuries, including hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

162.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

163.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## FIFTH COUNT

## NEGLIGENCE

164.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

165.    Defendant had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of 3M Dual-ended Combat Arms earplugs into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable and dangerous injuries.

166.    Defendant failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of 3M Dual-ended Combat Arms earplugs into interstate commerce in that Defendant knew or should have known that using the 3M Dual-ended Combat Arms earplugs could proximately cause Plaintiff's injuries. Specifically, Defendant failed to meet its duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of the defects and injuries associated with its Dual-ended Combat Arms earplugs. Defendant is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

a.    Failure to adequately warn Plaintiff and the USAF of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury by using the 3M Dual-ended Combat Arms earplugs;

b.    Failure to use reasonable care in testing and inspecting the 3M Dual-ended Combat Arms earplugs so as to ascertain whether or not they were safe for the purpose for which they were designed, manufactured and sold;

c.    Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of the 3M Dual-ended Combat Arms earplugs;

d.    Failure to use reasonable care in the process of manufacturing the 3M Dual-ended Combat Arms earplugs in a reasonably safe condition for the use for which they were intended;

e.    Failure to use reasonable care in the manner and method of warning Plaintiff and the USAF as to the dangers and risks of using 3M Dual-ended Combat Arms earplugs; and

f.     Such further acts and/or omissions that may be proven at trial.

167.    The above-described acts and/or omissions of Defendant were a direct and proximate cause of the severe, permanent and disabling injuries and resulting damages to Plaintiff.

168.    The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

169.    When the Dual-ended Combat Arms is inserted into the ear according to standard fitting instructions provided by Defendant, a proper seal is not formed with the ear canal.

170.    The defect has the same effect when either end is inserted because the earplugs are symmetrical. In either scenario, the effect is that the earplug may not maintain a tight seal in some wearers' ear canals such that dangerous sounds can bypass the plug altogether thereby posing serious risk to the wearer's hearing, unbeknownst to him or her.

171.    Upon information and belief, Defendant failed to exercise reasonable and due care under the circumstances and therefore breached this duty in the following ways:

    a.    Defendant failed to design the Dual-ended Combat Arms earplugs in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by Defendant;

    b.    Defendant failed to design the Dual-ended combat Arms earplugs in a manner which would safely prevent against the injuries claimed by Plaintiff;

    c.    Defendant failed to properly and thoroughly test the Dual-ended Combat Arms earplugs;

    d.    Defendant failed to properly and thoroughly analyze the data resulting from testing of the Dual-ended Combat Arms earplugs;

    e.    Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without an adequate warning of the significant and dangerous risks of the earplugs;

    f.    Defendant designed, manufactured, distributed, and sold the Dual-ended Combat Arms earplugs without providing adequate or proper instructions to avoid the harm which could foreseeably occur because of

using the earplugs in the manner Defendant's standard fitting instructions directed;

g.  Defendant failed to fulfill the standard of care required of a reasonable and prudent manufacturer of hearing protection products, specifically including products such as the Dual-ended Combat Arms earplugs; and

h.  Defendant negligently continued to manufacture and distribute the Dual-ended Combat Arms earplugs to the USAF after Defendant knew or should have known of its adverse effects and/or the availability of safer designs.

172.    Defendant knew or should have known that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the USAF service men and women who used the earplugs.

173.    The Dual-ended Combat Arms earplugs were dangerous when used by ordinary USAF service men and women who used it with the knowledge common to the USAF as to the product's characteristics and common usage.

174.    The Dual-ended Combat Arms earplugs were dangerous when used by ordinary USAF service men and women who followed the instructions provided by Defendant.

175.    Defendant knew or should have known of the defective design at the time the Dual-ended Combat Arms earplugs were used by Plaintiff.

176.    At the time the Dual-ended Combat Arms earplugs left the possession of Defendant, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary USAF service member.

177.    At the time the Dual-ended Combat Arms earplugs were used by Plaintiff, the Dual-ended Combat Arms earplugs were in a condition which made them unreasonably dangerous to the ordinary USAF service member.

178.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

179.    As designers, developers, manufacturers, inspectors, advertisers, distributors, and suppliers, of the Dual-ended Combat Arms earplugs, Defendant had superior knowledge of the Dual-ended Combat Arms earplugs and owed a duty of care to Plaintiff.

180.    It was foreseeable that Defendant's actions, omissions, and misrepresentations would lead to severe, permanent, and debilitating injuries to Plaintiff.

181.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's personal injuries – specifically Plaintiff's hearing loss and tinnitus. Defendant's conduct was a substantial factor in bringing about the injuries sustained by Plaintiff because 3M designed, manufactured, tested, sold, and distributed the Dual-ended Combat Arms earplugs to the USAF.

182.    The wrongs committed by Defendant were aggravated by the kind of malice, fraud, and grossly negligent disregard for the rights of others, the public, and Plaintiff, for which the law would allow the imposition of punitive damages (and which Plaintiff seeks, as set forth below).

183.    Such punitive damages are appropriate given Defendant's conduct, as further alleged herein, which includes the failure to comply with applicable guidelines and standards, including but not limited to ANSI, OSHA, EPA, and MPID guidelines and standards, which recklessly caused substantial injuries to Plaintiff (or, when viewed objectively from Defendant's standpoint at the time of the conduct, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others), of which Defendant was actually, subjectively aware of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others, or included a material representation that was false, with Defendant knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff.

184.    Plaintiff relied on the representations and suffered injuries as a proximate result of this reliance.

185.    Plaintiff seeks to assert claims for punitive damages in an amount within the jurisdictional limits of the Court, as set forth below.

186.    Plaintiff also alleges that the acts and omissions of Defendant, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff. In that regard, Plaintiff seeks punitive damages in amounts that would punish Defendant for its conduct, and which would deter other manufacturers from engaging in such misconduct in the future.

187.    As a direct and proximate result of Defendant's negligence in designing the defective Dual-ended Combat Arms earplugs, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

188.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

189.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

190.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## SIXTH COUNT

## STRICT PRODUCTS LIABILITY

191.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

192.    At all times herein mentioned, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the 3M Dual-ended Combat Arms earplugs as hereinabove described that were used by Plaintiff.

193.    Those 3M Dual-ended Combat Arms earplugs were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendant.

194.    At those times, the 3M Dual-ended Combat Arms earplugs were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff herein.

195.    The 3M Dual-ended Combat Arms earplugs that were designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant were defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design of the Dual-ended Combat Arms earplugs.

196.    The 3M Dual-ended Combat Arms earplugs that were designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant were

defective in design and/or formulation, in that, when they left the hands of Defendant, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer and/or earplug wearer would expect.

197.    At all times herein mentioned, the 3M Dual-ended Combat Arms earplugs were in a defective condition and unsafe, and Defendant knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendant.

198.    Defendant knew or should have known that at all times herein mentioned its Dual- ended Combat Arms earplugs were in a defective condition and were inherently dangerous and unsafe.

199.    Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

200.    The Dual-ended Combat Arms earplugs are defective in that the design of the earplug causes them to loosen in the wearer's ear, imperceptibly to the wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended.

201.    Defendant knew that the defective condition of the Dual-ended Combat Arms earplugs made it unreasonably dangerous to the USAF service members who used the device.

202.    The Dual-ended Combat Arms earplugs were dangerous when used by an ordinary user who used it as it was intended to be used.

203.    The Dual-ended Combat Arms earplugs were dangerous to an extent beyond which would be contemplated by the ordinary user who purchased and/or used the device because the design of the Dual-ended Combat Arms earplugs allow for dangerous sounds to bypass the plug altogether, thereby posing a serious risk to a USAF service member's hearing unbeknownst to him or her.

204.    Defendant knew of the defective design at the time the Dual-ended Combat Arms earplugs were provided to Plaintiff.

205.    At the time the Dual-ended Combat Arms earplugs left Defendant's possession, the Dual-ended Combat Arms earplugs were defective and were in a condition which made them unreasonably dangerous to the ordinary USAF service member who used them.

206.    At all relevant times, Plaintiff used the Dual-ended Combat Arms earplugs in the manner in which they were intended.

207.    The Dual-ended Combat Arms earplugs were the proximate cause of Plaintiff's hearing loss and tinnitus because the short-stem design of the earplugs allowed for dangerous sounds to bypass the plug altogether thereby posing a serious risk to Plaintiff's hearing unbeknownst to him.

208.    Defendant's conduct was a substantial factor in bringing about Plaintiff's personal injuries because Defendant designed, tested, manufactured, sold, and distributed the Dual-ended Combat Arms earplugs that caused Plaintiff's hearing loss and tinnitus.

209.    As a direct and proximate result of Defendant's design defect, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

210.    By reason of the foregoing, Defendant has become strictly liable in tort to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, 3M Dual-ended Combat Arms earplugs.

211.    Defendant's defective design, manufacturing defect, and inadequate warnings on the 3M Dual-ended Combat Arms earplugs were acts that amount to willful, wanton, and/or reckless conduct by Defendant.

212.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

213.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

214.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## SEVENTH COUNT

## BREACH OF IMPLIED WARRANTIES

215.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

216.    At all times herein mentioned, Defendant manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the 3M Dual-ended Combat Arms earplugs to be used by USAF personnel as a hearing protection device during training, active duty, and/or in combat.

217.    As a service member, Plaintiff was a foreseeable user of the Dual-ended Combat Arms earplugs.

218.    At the time Defendant marketed, sold, and distributed the Dual-ended Combat Arms earplugs, Defendant knew of the use for which the Dual-ended Combat Arms earplugs were

intended, impliedly warranted the Dual-ended Combat Arms earplugs to be fit for a particular purpose, and warranted that the Dual-ended Combat Arms earplugs were of merchantable quality and effective for such use.

219.    Defendant knew, or had reason to know, that Plaintiff would rely on Defendant's judgment and skill in providing the Dual-ended Combat Arms earplugs for its intended use.

220.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether the Dual-ended Combat Arms earplugs were of merchantable quality, safe, and effective for its intended use.

221.    Contrary to such implied warranties, the Dual-ended Combat Arms earplugs were neither of merchantable quality, nor safe or effective for its intended use, because the Dual-ended Combat Arms earplugs were, and are, unreasonably dangerous, defective, unfit and ineffective for the ordinary purposes for which the Dual-ended Combat Arms earplugs were used.

222.    The Dual-ended Combat Arms earplugs were defectively designed and manufactured and were distributed and sold without the provision of reasonable instructions or warnings regarding the foreseeable risk of harm posed by the Dual-ended Combat Arms earplugs to servicemembers, including Plaintiff.

223.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

224.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that the 3M Dual-ended Combat Arms earplugs were unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

225.    Plaintiff did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

226.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

227.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

228.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## EIGHTH COUNT

## FRAUDULENT MISREPRESENTATION

229.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

230.    Defendant falsely and fraudulently represented to Plaintiff, and/or the public in general, that the Dual-ended Combat Arms earplugs had been properly tested and were free from all defects.

231.    Defendant intentionally manipulated testing of the Dual-ended Combat Arms earplugs, resulting in false and misleading NRRs and improper fitting instructions.

232.    The representations made by Defendant were, in fact, false.

233. When said representations were made by Defendant, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

234. These representations were made by Defendant with the intent of defrauding and deceiving Plaintiff and the public in general and were made with the intent of inducing Plaintiff and the public in general, to recommend, purchase, and/or use the Dual-ended Combat Arms earplugs, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

235. At the time the aforesaid representations were made by Defendant, and at the time Plaintiff used the Dual-ended Combat Arms earplugs, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

236. In reliance upon said representations, Plaintiff was induced to and did use Dual-ended Combat Arms earplugs, thereby sustaining severe and permanent personal injuries.

237. Defendant knew and was aware, or should have been aware, that the Dual-ended Combat Arms earplugs had not been sufficiently tested, were defective in nature, and/or that they lacked adequate and/or sufficient warnings and instructions.

238. Defendant knew or should have known that the Dual-ended Combat Arms earplugs had a potential to, could, and would cause severe and grievous injury to the users of said product.

239. Defendant brought the Dual-ended Combat Arms earplugs to the market and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff.

240. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects, including hearing loss and tinnitus, and has further

suffered the injuries and damages as alleged herein, including severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

241.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

242.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## <u>NINTH COUNT</u>

## <u>FRAUDULENT CONCEALMENT</u>

243.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

244.    At all times relevant, Defendant misrepresented the safety and efficacy of the Dual-ended Combat Arms earplugs for their intended use.

245.    Defendant knew or was reckless in not knowing that its representations were false.

246.    In representations to Plaintiff, Defendant fraudulently concealed and intentionally omitted the following material information:

a.    that testing of the Dual-ended Combat Arms earplugs was deliberately flawed;

b.    the amount of hearing protection provided by the Dual-ended Combat Arms earplug;

    c.     that Defendant was aware of the defects in the Dual-ended Combat Arms earplug;

    d.     that the Dual-ended Combat Arms earplugs were defective, and would cause dangerous side effects, including but not limited to hearing damage or impairment;

    e.     that the Dual-ended Combat Arms earplugs were manufactured negligently;

    f.     that the Dual-ended Combat Arms earplugs were manufactured defectively;

    g.     that the Dual-ended Combat Arms earplugs were designed defectively;

    h.     that the Dual-ended Combat Arms earplugs were designed negligently; and,

    i.     that the Dual-ended Combat Arms earplugs were designed improperly.

247.    Defendant was under a duty to disclose to Plaintiff the defective nature of the Dual- ended Combat Arms earplugs.

248.    Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the Dual-ended Combat Arms earplugs, including Plaintiff, in particular.

249.    Defendant's concealment and omissions of material facts concerning, inter alia, the safety and efficacy of the Dual-ended Combat Arms earplugs was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff into reliance, continued use of the Dual-ended Combat Arms earplugs, and actions thereon, and to cause him or her to purchase and/or use the product. Defendant knew that Plaintiff had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding the Dual-ended Combat Arms earplugs, as set forth herein.

250.    Plaintiff reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendant.

251.    By reason of the foregoing, Plaintiff was caused to suffer serious and dangerous side effects, including sensorineural hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

252.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

253.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

254.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## TENTH COUNT

## NEGLIGENT MISREPRESENTATION

255.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

256.    Defendant had a duty to represent to Plaintiff and the public in general only accurate information about the extent to which the Dual-ended Combat Arms earplugs had been properly tested and found to be effective.

257.    Defendant was aware its testing procedures and fitting instructions were unlawfully manipulated.

258.    The representations made by Defendant were, in fact, false.

259.    Defendant failed to exercise ordinary care in the representation of the Dual-ended Combat Arms earplugs, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution into interstate commerce, in that Defendant negligently misrepresented the Dual-ended Combat Arms earplugs' safety and efficacy.

260.    Defendant breached its duty in representing the Dual-ended Combat Arms earplugs' serious defects to Plaintiff.

261.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, hearing loss and tinnitus, and has further suffered the injuries and damages as alleged herein.

262.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

263.    As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

264.    By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

**ELEVENTH COUNT**

**FRAUD AND DECEIT**

265.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

266.    Defendant conducted unlawful and improper testing on the Dual-ended Combat Arms earplugs.

267.    As a result of Defendant's unlawful and improper testing, Defendant blatantly and intentionally distributed false information which overstated the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

268.    As a result of Defendant's unlawful and improper testing, Defendant intentionally omitted and misrepresented certain test results to Plaintiff.

269.    Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and Plaintiff.

270.    The information distributed to Plaintiff by Defendant contained material representations of fact and/or omissions concerning the hearing protection provided by the Dual-ended Combat Arms earplugs.

271.    These representations were all false and misleading.

272.    Upon information and belief, Defendant intentionally suppressed and/or manipulated test results to falsely overstate the amount of hearing protection provided by the Dual-ended Combat Arms earplugs.

273.    It was the purpose of Defendant in making these representations to deceive and defraud the public and/or Plaintiff, to gain the confidence of the public and/or Plaintiff, to falsely ensure the quality and fitness for use of the Dual-ended Combat Arms earplugs and induce the

public and/or Plaintiff to purchase, request, dispense, recommend, and/or continue to use the Dual-ended Combat Arms earplugs.

274.    Defendant made the aforementioned false claims and false representations with the intent of convincing the public and/or Plaintiff that the Dual-ended Combat Arms earplugs were fit and safe for use.

275.    These representations and others made by Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

276.    These representations and others made by Defendant were made with the intention of deceiving and defrauding Plaintiff, were made to induce Plaintiff to rely upon misrepresentations, and caused Plaintiff to purchase, use, rely on, request, dispense, and/or recommend the Dual-ended Combat Arms earplugs.

277.    Defendant recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the Dual-ended Combat Arms earplugs to the USAF, the public at large, and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives.

278.    Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of Dual-ended Combat Arms earplugs by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplug.

279.    Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling

Plaintiff into a sense of security so that Plaintiff would rely on the representations made by Defendant and purchase, use, and rely on the Dual-ended Combat Arms earplugs.

280.    Plaintiff did in fact rely on and believe Defendant's representations to be true at the time they were made and relied upon the representations and was thereby induced to use and rely on the Dual-ended Combat Arms earplugs.

281.    At the time the representations were made, Plaintiff did not know the truth regarding the dangerous and serious safety concerns of the Dual-ended Combat Arms earplugs.

282.    Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of Defendant, nor could Plaintiff with reasonable diligence have discovered the true facts.

283.    Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of Dual-ended Combat Arms earplugs, Plaintiff would not have used and/or relied on the Dual-ended Combat Arms earplugs.

284.    Defendant's aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

285.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including hearing loss and tinnitus and has further suffered the injuries and damages as alleged herein.

286.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including, hearing loss and tinnitus, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications and/or hearing aids.

287.     As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Upon information and belief, Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

288.     By reason of the foregoing, Plaintiff has been damaged as against Defendant in an amount in excess of $75,000, the full amount of which will be proven at trial.

## TWELFTH COUNT

## NEGLIGENCE *PER SE*

289.     Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

290.     One or more state and federal statues, including but not limited to 31 U.S.C. § 3729(a)(1)(A), *et seq.*, 31 U.S.C. 3729(a)(1)(B), *et seq.*, 31 U.S.C. § 3729(a)(1)(C), *et seq.*, 40 C.F.R. § 211.201, *et seq.*, as well as ANSI S3.19-1974 and various EPA regulations, impose duties of care on Defendant with regard to Defendant's actions and/or omissions towards Plaintiff and/or Plaintiff's safety.

291.     By its acts and/or omissions resulting in Plaintiff's injuries, Defendant violated and/or breached one or more applicable statues and/or duties, including but not limited to 31 U.S.C. § 3729(a)(1)(A), *et seq.*, 31 U.S.C. § 3729(a)(1)(B), *et seq.*, 31 U.S.C. § 3729(a)(1)(C), *et seq.*, 40 C.F.R. § 211.201, *et seq.*, as well as ANSI S3.19-1974 and various EPA regulations, constituting negligence per se, including liability for all injuries to Plaintiff associated with his use of the 3M Dual-ended Combat Arms earplugs while in the USAF.

292.    Defendant's violation of law and breach of its statutory duties directly and proximately caused and continues to directly and proximately cause damage to Plaintiff in the form of economic damage and bodily injury for which Defendant is liable.

## PUNITIVE DAMAGES ALLEGATIONS

293.    Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

294.    Plaintiff Gilbert Formoso is entitled to punitive damages because Defendant misrepresented and/or withheld information and materials from the USAF, other government agencies, Plaintiff, and the public at large, concerning the design defect and ineffectiveness of the 3M Dual-ended Combat Arms earplugs as hearing protection devices, and, more specifically the serious hearing related injuries and/or complications associated with the use of the 3M Dual-ended Combat Arms earplugs.

295.    In respect to the USAF, other government agencies, and consumers, Defendant downplayed, understated or disregarded knowledge of the serious and permanent side-effects and risks associated with the use of 3M Dual-ended Combat Arms earplugs, despite available information that the 3M Dual-ended Combat Arms earplugs were defective and were likely to cause serious injuries including hearing loss and tinnitus.

296.    Defendant's failure to provide the necessary materials and information to the USAF and other government agencies, as well as their failure warn the Dual-ended Combat Arms earplugs wearers of the serious injuries associated with their use, was reckless and without regard for the public's safety and welfare.

297.    Defendant was or should have been in possession of evidence demonstrating that the Dual-ended Combat Arms earplugs were defective and caused serious injuries to the wearer.

Nevertheless, Defendant continued to market and sell the 3M Dual-ended Combat Arms earplugs by providing false and misleading information with regard to their safety and efficacy.

298.    Defendant failed to provide the USAF, other government agencies, and wearers, including Plaintiff, with available materials, information and warnings that would have ultimately dissuaded the USAF from purchasing the 3M Dual-ended Combat Arms earplugs and from issuing them to USAF personnel, thus depriving the USAF and personnel from weighing the true risks against the benefits of purchasing, issuing and using the 3M Dual-ended Combat Arms earplugs.

299.    Defendant's actions and failures set forth above were done with malice and form the necessary predicate for an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant on each of the above-referenced claims as follows:

1.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to loss of enjoyment of life, lost wages, loss of earning capacity, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct;

3.    Awarding Plaintiff reasonable attorneys' fees;

4.    Awarding Plaintiff the costs of these proceedings; and

5.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: May 2, 2019

By: /s/ Karl Stern_____
Karl Stern
Texas State Bar No. 19175665
QUINN   EMANUEL   URQUHART   &
SULLIVAN LLP
711 Louisiana St., Suite 500
Houston, TX 77002
Tel: (713) 221-7000
Fax: (713) 221-7100
Email: karlstern@quinnemanuel.com

*Attorneys for Plaintiff*

**Of Counsel:**

Harold A. Barza
Adam B. Wolfson
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Fl.
Los Angeles, California  90017
Tel: (213) 443-3000
Fax: (213) 443-3100

Paul J. Pennock
WEITZ & LUXENBERG P.C.
700 Broadway
New York, NY 10003
Tel: (212) 558-5500
Fax: (212) 344-5461